Good morning, everyone. The first argued case this morning is Number 19-1124, General Mills v. United States. Ms. Dillon. Good morning, Your Honors. Thank you, and may it please the Court. I am Sherry Dillon, on behalf of General Mills, or GM for short. The trial court held it lacked jurisdiction to hear General Mills' refund claim because it filed its administrative claim too late. That holding is wrong as a matter of law and should be reversed for two fundamental reasons. First, the trial court applied the wrong... Is that the law? Well, we believe they applied the wrong statute and that it's not attributable to a partnership item. That while the regulations do provide that interests may be included in a computational adjustment, our position is that not all computational adjustments are governed by Section 6230C. Only those that are attributable to partnership items are governed by 6230C. Otherwise, computational adjustments can be challenged under 6511A under the general two-year period. We believe Congress makes that clear and made it clear three times when it was declaring in various places that only refund claims attributable to partnership items are subject to limited exception for the six-month period under 6230C. If we're trying to understand the import of 6230C and you want us to understand that statute as having some attributable to a partnership item requirement, but 6230C doesn't say that, shouldn't we just follow the plain language of the statute and that's the best evidence of what was Congress' intent as to the meaning of 6230C? In 6230D, it explains that 6230C is applicable to refunds attributable to a partnership item. 6511A is again the general period and 6511G tells us that when the general period does not apply... ...in 6230C, why wouldn't Congress have just written that into 6230C? I believe they did, and they did so by... But not quite, right? It's not actually written into 6230C. Based on the plain language of 6230C, there's nothing there that gives me any indicia that they were thinking of limiting 6230C's scope to just attributable to partnership items. I understand you're looking at other evidence outside of 6230C, but just looking at 6230C itself, am I correct? You are correct that 6230C does not explicitly say it only applies, is only attributable to a partnership item. However, initially 6230D-6 originally applied both to partnership items and affected items. Congress wanted to make clear that affected items were no longer accepted from 6511A. In 1997, it explicitly removed that to clarify so that there would be no doubt that 6230C was attributable only to partnership items. In addition, 6230C-1A, that references computational adjustments, has some other limitations. And those limitations are consistent and show that they are attributable to partnership items. If 6230 had been open to any computational adjustment and limited not to those, it wouldn't have had those limitations within itself. So 6230C-1A demonstrates that it applies to a subset of computational adjustments by stating that it applies to those that are necessary to ensure that partnership items are treated consistently with the partnership return and individual partner returns, or to apply to the partner a settlement, final partnership agreement, or court decision related to the partnership return. So within 6230C-1A, it is defining for us what is attributable to or what is not attributable to a partnership item. And that's consistent with this court's historical reading of 6511G and 6230A, starting with Pro Chirico and affirmed with Keener, that attributable to is the standard to look to to see if section 6230 applies. And that's telling us that not all claims for refund that relate to an audit of partnership exams are covered by 6230. You have to look to whether they're attributable to. And that again goes back to the history of TEFRA and the whole purpose. And that was to allow the service to adjust a partnership return and apply adjustments to partner's returns to conform the partner's returns to the adjusted partnership return. And things that affect only a partner that have unique facts that can have no impact on any other partner's liability, those are not attributable to, as this court said in Pro Chirico and confirmed when it continued to rely on that in Keener and follow on cases. So again, it's our position then that 6230 is not so limited. Again, in this instance, it was not necessary to apply to the partner a settlement. Again, the point of 6230 is to make a partner's return consistent with the adjusted partnership return. And the interest for any one partner, in particular LCU interest, can have no impact on any other partner. So the short period for limitations is not needed. That was put into the code so that should there be any challenges to a partnership exam or partnership adjustments or the computation of those, they could flow them through, the service would know about them promptly within the six-month period, and it could conform all partners. For example, let's say the service had made a two-partner partnership, made a $100 adjustment. If you make that $100 adjustment and the service assumed each partner should get 50 of income and therefore made a computational adjustment, sent out the proper notice, which we'll also get to in a moment, Your Honors, then the service assumed it was a 50-50 partnership. Partner A gets a $50 increase in income. Partner A is, wait a minute, we're 40-60 partners. I shouldn't only have gotten 40, not 50. The purpose of 6230 and the reason for the short statute is so that partner can come into the service and say, hey, you got it wrong. I should have only been allocated 40, not 50. We're a 40-60 partnership. And it would affect the partner who got 50 and should have gotten 60. And that allows, again, it affects the partnership as a whole when there's an error that affects all partners. And that's what is attributable to a partnership item, and that's what's intended to fall under 6230C by the erroneous computation of an adjustment necessary to apply to the partner settlement. That's not what we have here, LCU interest. As the government agrees, it requires a host of partner-level facts. They've never alleged that the application of LCU interest could impact any other partner. And then I'd like to turn to our second argument, which is even if the six-month period were to apply, the government never mailed the notice required by Section 6230C. And so regardless of how your honors decide, whether you decide it's the 6511 statute that applies, it's undisputed that we filed within two years, or if it's the 6230, General Mills' refund claim was timely. Turning now to my discussion of the second fundamental reason, again, that the government never mailed 6230C is clear that it requires the government to mail a taxpayer, the written notice of computational adjustment. The government in the trial below was able to persuade the lower court that General Mills had effective notice of the computational adjustment based on information that was gleaned from an assemblage of documents sent to GM, even though no one single document provided the notice. The government has since abandoned that approach. Instead, it claims to have found the specific letters that constitute 6230C written notices of computational adjustment. But what the government is pointing to are what are called Section 6631 letters, and they cannot possibly be the proper notice under 6230C. They make no reference to a limitations period or to 6230, and they give no sign that they are jurisdictionally significant in any way. The letters explain, hey, we're being issued as required by Section 6631. Section 6631, an entirely different code provision, was enacted in connection with the 1998 IRS Restructuring and Reform Act. The 6631 was expanding the Taxpayer Bill of Rights for individual taxpayers. It has nothing to do with corporate taxpayers. It has nothing to do with TEFRA. Those letters never should have been sent to General Mills at all. We're talking about the interest computation schedules, right? Yes, and the letters attached. And they give you the applicable date for when the interest is going to start clicking, right? Some of them provide the applicable date. Some of them tell us it's off. They also, the schedules themselves, don't separate partnership underpayments from corporate underpayments. Do they give you the LCU amounts? Not specific. Not specific to the underpayments, what is being contested here, and that is that the applicable date for the LCU interest, that they selected the wrong applicable date for some of our underpayments, but not for others of our underpayments. That's what's in dispute at the merits level, the merits of this case. And they don't, the LCU schedules do not show which of the, how the interest applies to the various different types of underpayments, whether it's a corporate underpayment or a partnership underpayment. So they don't provide any notice of what to challenge and where the wrong amounts are. Worse yet, the Section 6631 letters, that should never have been sent to General Mills at all, they tell General Mills, do nothing. These are for your information, and if any further action is required, it will be sent, it will be taken by the IRS. And again, they fail to provide the necessary information, the way those schedules are arranged. They do not show the application of the LCU interest to the underpayments of tax. General Mills had already paid the tax by this point, is that right? Absolutely. And also paid the interest. Yes, by the time the letters came, again demonstrating that these letters were never intended to provide notice of a computational adjustment. General Mills had been working with the service. But they could provide notice in terms of when the six-month period is clicking. I don't believe they can. For making it an administrative refund claim. I believe a notice that tells you do nothing, and that it's sent under an entirely different code provision, is not sufficient. It is affirmatively misleading to the taxpayer. General Mills, like any taxpayer, any large or even small audit, you are constantly working with the IRS. You know their positions. We know they know our positions. You're discussing them. You're negotiating them. LC interest was something, and the applicable date for that interest was an issue of contention for a very long time. The parties agreed real time. Eight months after the 6631 letters were erroneously sent to General Mills, General Mills and the IRS entered into a final global settlement agreement. And that settlement agreement carved out specifically the opportunity for General Mills to challenge interest. Because that issue had not been able to be, was not resolved, and the parties still disagreed. And why would any reasonable government official enter into a settlement agreement at that time, if it had intended and it had thought that the statute of limitations for challenging that had already expired? Okay. Thank you. Let's hear from the government. Ms. Avetta. Thank you, Your Honors, and may it please the court, Julie Avetta for the United States. General Mills had six months to file a refund claim, and they waited two years. And for that reason, the Court of Federal Claims did not have jurisdiction over this action and appropriately dismissed it. What is the policy, the philosophy behind this distinction as to partnership items? Which distinction do you mean, Your Honor? The TEFRA draws several degrees of distinction between partnership items, non-partnership items, and affected items, as well as computational adjustments. Those are not the policy behind drawing those distinctions is not implicated on the question before this court. All this court needs to determine is whether a taxpayer here received sufficient notice of a computational adjustment to be bound by the six-month statute of limitations to challenge such a computational adjustment. The computational adjustment here is the application of large corporate underpayment interest to the determination of a large corporate underpayment. And that was a settled issue in a partnership proceeding. So at that level, you're talking about a partnership. But members of that partnership are subsidiaries of the corporate taxpayer. So the results of these settlements will flow to these partners and then will be reported on the corporate tax return, which is why large corporate underpayment becomes a side effect of the partnership or a direct effect of the partnership settlement. More than one partner who is a subsidiary of the GM corporate entity reached a settlement in the partnership proceeding with the IRS as to liability, not as to interest. It is clear on the record that the parties were not contemplating settling the interest and explicitly carved it out. But as the record reflects, and this is at page 604 of the appendix, the final settlement, which was signed in November of 2011, which was actually still within the six-month statute of limitations with respect to the latter tax years, the exception of interest, calculation of interest, was the term used in the settlement document. That was not included in the settlement, and that was explicitly not intended to be included in the settlement because there were obviously still some agreements about that. But that doesn't change the nature of the relationship between interest and the settlement in the partnership proceeding. Interest is a function of the settlement in the partnership proceeding. If you determine that your tax liability is a particular amount and you as a partner fall within this large corporate category as a subsidiary of General Mills. How does that justify the very short limitations period? The Congress has enacted a six-month limitations period on directly assessed computational adjustments. We know Congress enacted it. I asked for the policy, the understanding, in order to determine the intent of Congress. The six-month limitations period applies only to computational adjustments that are not subject to deficiency procedures. So you can see that there is an expeditiousness and efficiency policy goal here because when you are accepting procedures from deficiency, that means that if deficiency procedures are not going to apply to a determination, everything happens a whole lot faster. You need to have answers to questions faster than the deficiency determinations can provide you. Also, you're taking a computational adjustment, which is not an issue that is meant to have upstream ramifications, as has been discussed. This is not a partnership item. Other partners are not going to be affected by this. But because it's a post-payment remedy when you're in refund suit territory as opposed to deficiency territory. With the deficiency proceedings, you go to tax court and you have a full adjudicative proceeding on your liability before you are obligated to pay a cent. This is obviously part of a scheme that was put together to streamline and make things as efficient as possible for the benefit of all involved partners and all involved parties, the government as well. If a partner is out there in the deficiency proceedings trying to figure out what the interest is, and this is holding up all of these other determinations that would flow from how this is going to affect other aspects of the partner's liability, that's a drag on the whole system. That imposes costs on all the parties involved. The six-month period here makes clear that the Congress's selection of the six-month period here says everybody needs to have answers, and everybody needs to have them in time to make all of our choices here in our planning and in our organization of our partnership finances. That's what a six-month period would give you. The TEFRA statute was enacted long, long, long after the general two-year period of limitations, and as the court below observed, because it is specifically targeted toward these really complex partnership proceedings. Why don't you move on to whether there was proper notice? I think we have your argument on this point. Thank you. Well, the Court of Federal Claims did not precisely hold that the notice received was cumulative. It wasn't like you received a letter in 2007 and another in 2010, and then those together were notice, or in 2011 then that cured some deficiency in the previous notice. What the court observed is what the taxpayer has observed here in this court, which is that you had an awareness of the proceeding as it was ongoing. You had information. You knew their positions. They knew your positions. And with that in mind, the notice standard that the Seventh Circuit has adopted in acute care, that the Fifth Circuit has adopted in Duffy and in Kircher, would apply just as well here, which is that if you're on notice, if you know the fact of a deficiency, you've underpaid tax, the amount of the deficiency, how much you've underpaid, or the information necessary for you to determine how much you've underpaid, that is sufficient under the statute to trigger the six-month period. Do you think it was harmless error because they had sufficient notice, or do you think the Secretary actually did mail them something that triggered the start of the six-month period? We would suggest that there's no error, let alone harmless error. Any error certainly would be harmless. The Fifth Circuit, first of all, has held that payment is sufficient. There has to be, unless I'm mistaken, the statute requires that the six-month period is triggered after the day on which the Secretary mails notice, right? Well, that's a date certain. So what is the date certain? What day did the Secretary mail notice? Which document is it that you view as the document that he mailed on a particular day that qualified as notice? June 14, 2011, is the notice date for 2004 through 2006 tax years. That is when the comprehensive interest schedule was mailed. April 18, 2011, was the notice date for 2002 and 2003. That was the date when the comprehensive interest schedules were mailed. For those periods, April 20, an amended 2002 schedule was mailed, and arguably a statute could have been adjusted to that date as well. Regardless, and as the Court has noted, the taxpayer had already fully paid the obligation by then. So if you read this as a purely jurisdictional document, as Judge Ten suggested, that clock started running at the latest on June 14, 2011. So a refund claim would have had to have been filed within 2011, and none was. Arguably, and we proposed several approaches to this below, the earlier letters that were sent to taxpayer also could have triggered that notice because they met that standard. But it's absolutely beyond cattle, indisputable, that by June of 2011, the taxpayer had every item necessary to determine what they owed in terms of large corporate underpayment interest, as of what date, at what rate, and most importantly, as of the concluding date. And because we're talking about interest here, that matters. When you're computing interest over time, interest only runs until you pay the debt. So you're not going to get a notice of an interest amount due that is a sum certain because interest will continue to run even after that notice until it's paid. For jurisdictional purposes, therefore, the interest schedules that were sent in the spring of 2011 were jurisdictionally sufficient under 6230C and under the standards embraced by the Fifth Circuit and the Seventh Circuit. Now, to speak very briefly to the Fifth Circuit cases, they held that payment was evidence that a taxpayer was on sufficient notice, that a taxpayer was in possession of those elements of notice necessary to trigger the running of the statute. In other words, you know what you owe. You know as of when. And you've computed, in that case, the interest that you owe on it, and that was a different kind of interest, but it was governed by the same reasoning as the interest here. And in those cases, payment wasn't what triggered the jurisdictional clock, but it was evidence of notice. And where that notice has been received, as here, the six-month clock runs six months later. It does not depend on the type of computational adjustment being provided, and it does not affect the nature of the payment, the interest that is subject to that, is not affected by whether it is the outcome of a settlement or a partnership proceeding. Can we talk about the three statutes that GM refers to in trying to understand the meaning of 6230C, 6230D6, 7422H, 6511G, where they're saying those provisions provide some indicators of how Congress understood the scope of 6230C. And so why isn't that right? As you phrased it, it is. They do provide insight into the fact that Congress saw the need to... But the argument is that this is what 6230C means when Congress is describing and referencing 6230C in these other provisions. And I think, as Your Honor has noted, that's rather inverted, because what 6511G and 7422H do is they carve out and direct you to the 6230C scheme claims that are attributable to partnership items. Now, as we have submitted here and explained exhaustively on brief, the partnership item status of interest is not material to this determination, but as to that argument, the fact that you needed to create carve-outs for items that are attributable to partnership items doesn't define the universe of exceptions from the general 6511A two-year period. That period does not... It's not the default condition for every partnership-related item that isn't carved out. And that seems to be the threshold position of the taxpayers here. We would submit that's incorrect, and the Court of Federal Claims so helped. The universe of claims that fall outside of the two-year statute is not limited to those that Congress has selectively carved out and said these are attributable to partnership items. Do those provisions do any work in the statute? They do, but not in this case. But what work do they do? The argument on the other side is they're meaningless, they're superfluous. Why is that not the case? Because in a case where the distinction between a partnership item attributable to a partnership item, an affected item, or a partner-level item is material, they matter. That distinction is not salient here. Interest is not different or differently treated here based on whether it is properly characterized as a partnership item or attributable to one or affected by one, because interest is a computational adjustment. It is definitionally a computational adjustment. The Treasury regulation defines it as such. The Court of Federal Claims has so held. There were several other circuit courts, the Sixth, the Second, the Fourth, and the Ombud Tax Court have said that interest is not subject to the deficiency procedures. So you're not looking at whether it is a partner or partnership-level item for purposes of what the tax court has jurisdiction to determine, prepayment. It's a computational adjustment, which puts you in the universe of no deficiency procedures unless you fall within these exceptions here, and as we have shown on brief, the taxpayer here does not. Okay. Thank you. Thank you, Ms. Yvette. Ms. Dillon. Thank you. I would like to return to a couple of the questions first, and your questions about the policy. And I just wanted to clear up, with a TEFRA proceeding, the TEFRA proceeding can be wrapped up. No other partners are being held up in determining their tax liability or holding up the partnership as a whole from concluding the partnership proceedings and the TEFRA proceedings with respect to the other partners because of an interest challenge by one partner. That would be separate and apart, and it doesn't affect the tax liability of any other partner and would have nothing to do with holding up the partnership proceedings. And again, back to the point of whether the two statutes are intended to be, if 6230 is intended to be a stand-alone statute, we believe that it can't be. That would just render the attributable to language as superfluous. If all computational adjustments were intended to be covered by 6230, it would make no sense. Congress said it three times. It must have some meaning. It was trying to reconcile when each of the two statutes would apply. All three statutes and provisions were enacted at the same time, creating an integrated statutory structure, again, so that we would know when each statute applies and when it doesn't. And back to notice that due process certainly requires more than sending the taxpayer a misleading notice. Section 6230 also requires more. 6230 requires that the Secretary mail a written notice of computational adjustment, and a notice mailed under another code provision telling the taxpayer to do nothing that doesn't provide all of the information to calculate cannot possibly be a notice that's intended to apprise the taxpayer of a loss of right, and that would be the right to a judicial challenge, and the opportunity to object, which the Supreme Court has held time and time again in a line of cases, in Jones, Moulin, Mennonite Board of Admissions, that a reasonable government official has to be providing notice that would apprise the taxpayer, again, of a loss of right and the opportunity to object. Neither of those occurred here. And payment, again, respectfully, we believe is irrelevant. What the taxpayer was able to decipher from muddled messages and what it was able to do to stop the accrual of hot interest, it's not the taxpayer's actions that matter here. It's the government's. The taxpayer is not saying they weren't aware of the amount of money they would owe. What the taxpayer is saying is, I was never given notice that a jurisdictional period was being triggered, and that's the notice that was required and that's the notice that was not provided. So the taxpayer's payment, the taxpayer's sophistication, those would be completely unworkable standards for this court or any court to apply taxpayer by taxpayer. And determining that this type of notice is sufficient would have broader policy implications overall for the tax system. Ninety percent of tax cases are brought by unsophisticated taxpayers. And if you don't tell them that, hey, something is happening here, you are going to have, and it's going to be when we think a taxpayer has sort of figured it out, that that sufficient notice, that's a very difficult standard to apply and would be very difficult for the courts to apply to the unsophisticated taxpayers as well as sophisticated taxpayers, trying to estimate when a taxpayer would have enough information in order to have sufficient notice to trigger a jurisdictional document, particularly in light where the government is pointing to a document that tells the taxpayer, this is for your information. Don't do anything. If anything needs to be done, the IRS will come back to you. And the IRS was coming back. And the IRS was continuing to negotiate and continuing to discuss and debate the applicable date. And again, that's the reason it was left out of the global settlement agreement. No one believed, the IRS did not intend at the time, that the 6631 letters, I think if they did, they certainly wouldn't have said do nothing and they're for your information only. Again, this seems to be, we're getting into a due process problem, that awareness and information are not sufficient and the taxpayer's actions don't excuse the government's obligations to provide notice of a potential loss of right or the opportunity to object. Thank you, Ms. Dillon. We have the argument. Thank you. Thank you very much. The case is taken under submission.